

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NAUTILUS INSURANCE COMPANY, )
)
        Plaintiff, )
)
   vs. ) No. 05 C 3941
)
VUK BUILDERS, INC.; DUK HEE RHEE; )
LA SALLE BANK, as trustee U/T/#25-7618; )
LINCOLN-BELMONT HOTEL )
CORPORATION; IKE & RICK'S PLACE, )
INC.; and CAPITOL INDEMNITY )
CORPORATION, )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Nautilus ("Nautilus") brought an action seeking a declaratory judgment resolving the obligation it owes to defendants Vuk Builders, Inc. ("Vuk"), Duk Hee Rhee ("Rhee"), LaSalle Bank ("LaSalle"), Lincoln-Belmont Hotel Corporation ("Lincoln"), Ike & Rick's Place, Inc. ("Ike & Rick's"), L & W Sales, Inc. ("L & W"), and Capitol Indemnity Corporation ("Capitol") to defend and indemnify defendants in two state court negligence actions. On September 12, 2005, defendants Lincoln, Ike & Rick's and L & W moved to strike plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted. On that same day, defendant Vuk also moved to dismiss under Rule 12(b)(6) or, alternatively, to stay the complaint pending resolution of state court actions hereinafter described. On October 21, 2005, defendant Rhee joined Vuk's motion for dismissal, adopting and incorporating Vuk's arguments as its own. Because defendants are similarly situated, and plaintiff responds to their motions collectively, without designating specific defendants or specific arguments, we analyze defendants' arguments together. For the

following reasons, we grant defendants' motions.

## BACKGROUND

In reviewing a motion to dismiss under Rule 12(b)(6), we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). FED. R. CIV. P. 8(a)(2) requires only that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and therefore the complaint can be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." Gibson, 910 F.2d at 1521. *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Nautilus brought suit to obtain a declaratory judgment as to its obligation to defend and indemnify defendants in two state negligence suits, since consolidated into one action in the state court. At the center of the debate is the Commercial Lines Insurance policy number NC 197895, which Nautilus issued to Vuk for the period of November 12, 2002 to November 12, 2003. Rhee is an additional insured under that policy.

The first underlying lawsuit, LaSalle Bank as trustee u/t/#25-7618, Lincoln-Belmont Hotel Corporation, Ike & Rick's Place, Inc., and L & W Sales, Inc. v. Samuel Lopez, individually and d/b/a Low Cost Builders, Vuk Builders, Inc., Duk Hee Rhee, Patricia Craig, individually and Craig and Associates Architects, L.L.C. ("Lincoln suit"), case number 04 L 006561, is pending in the Circuit Court of Cook County. The Lincoln suit involves excavation and construction work that took place at 3235 North Ashland Avenue in Chicago, Illinois, in July 2005. According to the complaint, Rhee, owner of the property, entered into a contract providing that Vuk would perform excavation work on the Rhee property. Subsequently, Vuk entered into a subcontract with Low Cost, providing that Low Cost would perform the

excavation work on the Rhee property. The Lincoln suit alleges that Low Cost, as an agent of Vuk and Rhee, negligently performed the excavation by removing soil, sand and other materials beneath the property footings, causing the plaintiffs' neighboring properties to shift and erode. Such excavation was performed without bracing or reinforcing the excavation, which caused damage to the foundation, footings, masonry walls and other structural components of plaintiffs' properties. Plaintiffs allege that the negligent work caused extensive structural damage to plaintiffs' properties and financial damage to plaintiffs' businesses. Plaintiffs request damages under theories of negligence, violation of the Chicago Municipal Code Excavation Ordinance, and violation of the Adjacent Landowner Excavation Protection Act. The second underlying suit, <u>Capitol Indemnity Corporation as subrogee of Lincoln-Belmont Hotel Corporation v. Duk Hee Rhee, Vuk Builders, Inc., Low Cost Builders, Inc., Patricia Craig, and Craig and Associates Architects, LLC</u> ("Capitol suit"), case number 04 L 011525, is also pending in the Circuit Court of Cook County. Capitol is Lincoln's insurer, and the suit involves the same allegedly negligent work performed at the Rhee property, alleging that Lopez negligently excavated property to a level eight to twelve feet below sidewalk grade and within five feet of the adjoining building, and that Low Cost failed to use adequate bracing. Plaintiffs allege that such negligent conduct caused significant damage and Capitol seeks subrogation for payments made to Lincoln under its property insurance contract.

Although Nautilus is currently defending Vuk and Rhee in the underlying suits, Nautilus brings this action to determine its defense and indemnification obligations. Nautilus argues that because the property damage alleged in the underlying suits was purportedly caused by subsidence of soil under the Lincoln-Belmont Hotel, such damage is specifically excluded from the Nautilus Commercial Lines insurance policy issued to Vuk. The relevant portion of the

insurance policy – the "Subsidence of Land" exclusion – states:

> This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or "medical payments" caused by, resulting from, contributed to or aggravated by the 'subsidence' of land.

(Ins. policy at Sect. I). The policy defines "subsidence" to mean "earth movement, including but not limited to landslide, mud flow, earth sinking, rising or shifting." (*Id.* at Sect. V). Defendants, however, argue that the underlying actions may or may not implicate subsidence – an issue to be decided in those actions – and any subsidence alleged is not covered by the exclusion. Alternatively, defendants argue that because there are some theories of recovery upon which plaintiffs rely in the underlying suits that do not implicate subsidence, plaintiff is obligated to defend all claims. Defendants further argue that the duty to indemnify should not be determined until a determination has been made as to liability in the underlying suits.

## DISCUSSION

### Duty to Defend

When a federal court hears a case based on diversity of citizenship, the "ultimate responsibility of the district courts is to apply the law of the state in which the court sits with respect to substantive matters." Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 633 (7th Cir.2002) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Therefore, as this case is brought in diversity, we use Illinois law.

In determining the matter at hand, we must determine whether the allegations in the underlying cases allege facts "within or potentially within" the Commercial Lines Insurance policy Nautilus issued to Vuk. Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement, 741 N.E.2d 253, 254 (Ill.2000). If we find that the underlying complaints allege facts of events or activities that are or may be covered under the insurance policy, the insurer is obligated to

defend, "even if the allegations are groundless, false, or fraudulent." *Id.* *See also* Oakley Transport, Inc. v. Zurich Ins. Co., 648 N.E.2d 1099, 1102 (App.Ct.Ill.1995) ("the 'declaratory' court must ordinarily confine its inquiry to a comparison of the allegations of the underlying complaint and the relevant provisions of the insurance policy in determining a duty to defend"). As noted above, the complaints in the Lincoln and Capitol suits allege that the defendants and their agents committed negligent acts, including excavating the Rhee property to a depth below the footings without adequately bracing or reinforcing the property, which caused extensive and substantial damage to plaintiffs' properties and businesses (Lincoln suit at ¶¶13-21; Capital suit ¶¶11-13, 30-31). Both suits allege negligence on the part of the defendants – damage resulting from man-made, rather than natural, causes. Therefore, we must interpret the insurance policy to determine whether the allegations contained in the underlying complaints are covered under that policy. Specifically, we must determine whether the alleged damage due to negligent excavation falls within the subsidence exclusion contained in the insurance policy.

In interpreting an insurance policy, we are guided by well-established principles of Illinois law. The terms of an insurance policy should "be read according to their plain and ordinary meaning, and a court should not search for an ambiguity where there is none." Allstate Ins. Co. v. Smiley, 659 N.E.2d 1345, 1350 (Ill.App.Ct.1995). Because insurance policies are interpreted based on a reasonable person's understanding, rather than the insurer's intent, an ambiguity arises where a reasonable person in the position of the insured, reading the policy as a whole, could construe the words in several different ways. *Id.* Upon finding an ambiguity, we construe the policy against the insurer and in favor of the insured. *Id.* *See also* Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co., 139 F.3d 561, 565 (7th Cir.1998) ("Of course, the court must construe the complaint against the insured liberally, and any doubts as

to the insurer's duty must be resolved in favor of the insured"). In the same vein, in construing an insurance policy exclusion, we construe ambiguities narrowly against the insurer and in favor of the insured. <u>Oakley Transport, Inc.</u>, 648 N.E.2d at 1104.

Although Illinois courts have not had very many opportunities to construe "subsidence" or "earth movement" exclusions similar to the one at issue in this case, other jurisdictions generally have found such exclusions to be ambiguous and construed them narrowly in favor of the insured. *See* <u>Murray v. State Farm Fire & Cas. Co.</u>, 509 S.E.2d 1 (W.Va. 1998). In <u>Murray</u>, the West Virginia Supreme Court catalogued cases from courts around the nation dealing with earth movement exclusions and determined that the "majority of courts that have considered earth movement exclusions have found them to be ambiguous" *Id.*, at 9. Like the <u>Murray</u> court, defendants point to <u>Mattis v. State Farm Fire & Cas. Co.</u>, 118 Ill.App.3d 612 (Ill.App.Ct.1983), to support their argument that Illinois courts construe earth movement exclusion clauses to apply only to earth movement by natural causes, unless the language of the exclusion explicitly states otherwise. In <u>Mattis</u>, the Illinois court construed an earth movement exclusion contained in a first-party insurance policy to apply only to earth movement due to natural causes. The <u>Mattis</u> court stated that "'[t]he majority of the courts which have considered this particular exclusion have found it to be ambiguous and have applied the doctrine of *ejusdem generis* to limit the definition of "earth movement"' to causes of the same class as earthquake and landslide." 118 Ill.App.3d at 617.

Plaintiff attempts to distinguish this case from <u>Mattis</u> on the grounds that here we are dealing with a third party Comprehensive General Liability policy, and <u>Mattis</u> addressed the issue as it related to a first party "all risk" policy. Plaintiff argues, "First party property policies ... cover the insured's own losses, including losses resulting from purely natural causes. In

contrast, third party liability policies never cover losses caused solely by natural phenomena. Instead, such policies provide coverage for bodily injury or property damage caused by the insured's negligence or the negligence of a person for whom the insured is legally responsible" (pl's response at 10). Plaintiff, however, offers no case law or academic publication to support such an argument. In fact, a closer look at <u>Mattis</u> actually discredits the argument. The <u>Mattis</u> court relied specifically on the analysis in <u>Wisconsin Builders, Inc. v. General Ins. Co. of America</u>, 221 N.W.2d 832, 837 (Wisc.1974), to determine that earth movement clauses should be limited to natural cause earth movement. In <u>Wisconsin Builders</u>, the Wisconsin Supreme Court analyzed an earth movement exclusion in a builder's risk insurance policy, determined that the exclusion was ambiguous, should be construed against the insurer, and the doctrine of *ejusdem generis* should apply to limit the meaning of earth movement to the same class of forces as those specifically set forth in the exclusion. 221 N.W.2d. at 837-38. Although <u>Mattis</u> construed a first party policy in doing so, the court relied specifically on a case construing a third party policy in the same manner.

Additionally, other courts have similarly limited earth movement exclusion clauses in third party policy cases. *See* <u>Ins. Co. of State of Pennsylvania v. ALT Affordable Housing Services, Inc.</u>, 1999 WL 33290622, *1 (W.D.Tex.,1999) (construing a commercial property insurance policy earth movement exclusion to be limited to movement due to natural causes according to the principle of *ejusdem generis*); <u>American Motorists Ins. Co. v. R & S Meats, Inc.</u>, 526 N.W.2d 791, 796 (Wis.App.Ct.1994) (construing <u>Wisconsin Builders</u> to stand for the proposition that "if the earth movement is due to human action, coverage is not lost" in a commercial property coverage policy); <u>Henning Nelson Constr. Co. v. Fireman's Fund American Life Ins. Co.</u>, 383 N.W.2d 645, 653 (Minn.1986) (construing an earth movement exclusion in a

builder's risk policy "to apply to earth movements caused by widespread natural disasters and not to those caused by human forces"). Therefore, without any evidence from the plaintiff that third party policies should be construed differently, Mattis is relevant and persuasive in deciding this case.

We next determine whether the "Subsidence of Land" exclusion is, itself, ambiguous. The exclusion clause reads: "This insurance does not apply to 'bodily injury,' 'property damage,' 'personal and advertising injury' or medical payments caused by, resulting from, contributed to or aggravated by the 'subsidence' of land." (Ins. policy, Sec. I) "'Subsidence' shall mean earth movement, including but not limited to landslide, mud flow, earth sinking, rising or shifting." (*Id.*, Sec. V) Such language is ambiguous. We find that the examples given for "subsidence" – landslide, mud flow, earth sinking, rising or shifting – define the *type* of earth movement, not the *cause*. The cause is ambiguous. The examples could be construed to exclude coverage for natural causes. For example, earth sinking, rising or shifting could be attributed to earthquakes. On the other hand, the same examples could be construed to exclude coverage for man-made events. For example, negligent excavation could also result in earth sinking, rising or shifting. Without further definition of the excluded causes of subsidence or earth movement, we conclude that the exclusion does not clearly stand for one or the other.

Additionally, because plaintiff is in the business of insurance and easily could have specifically defined excluded causes of subsidence or excluded earth movement, "regardless of cause," we consider its omission to be significant. *Cf.* State Farm Fire and Cas. Co. v. Castillo, 829 So.2d 242, 246 (Fla.App.Ct.2002) (disagreeing with Murray to find that an earth movement exclusion applied to man-made causes where the exclusion included a lead-in clause stating that coverage is excluded, "regardless of: a) the cause of the excluded event ..."). Therefore, we

conclude that the "Subsidence of Land" exclusion is ambiguous. Construing it narrowly and according to precedent, we find that the exclusion covers only earth movement due to natural causes. Thus, earth movement due to man-made causes alleged in the underlying suits – negligence in excavating and bracing the property – is not included in the exclusion and is covered under the insurance policy.[1]

Plaintiff argues that "[r]eading an implied 'natural causes' limitation into a subsidence exclusion contained in a liability policy is nonsensical since liability policies do not insure against losses resulting from such 'natural causes' .... The only reasonable construction of that endorsement is that the parties agreed that Nautilus would not provide coverage for the risk of construction-related subsidence. Any other interpretation ... would effectively eliminate the subsidence exclusion altogether"(pl's response at 10). Although such an argument has superficial appeal, we cannot say that, as a rule, it is nonsensical for third party policies to insure against losses resulting from natural causes. It is possible that a property owner (or his insurer) could be subject to a claim arising from damage caused by a natural disaster. For example, the owner of a house built on a hill could be liable for damages if a landslide caused his home to collapse onto his neighbor's property. One could also imagine a scenario where an earthquake causes a property owner's land to shift, which dislodged his building and caused damage to surrounding properties. It seems that insurance companies would want to place such unforeseen risks, such as damage and subsidence due to natural causes, outside the scope of coverage so as not to be liable for unlikely risks. As one Illinois court noted, "Standard

---

[1] Both Vuk and Nautilus expend significant energy discussing whether the underlying complaints allege subsidence and/or some other damage. Once we have decided that any subsidence alleged in those complaints does not fall within the subsidence exclusion, however, we do not need to address whether the underlying complaints allege damages from actions or events other than subsidence or earth movement.

commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks .... The premiums charged by the CGL insurer reflects the underwriting objective of placing [such exclusions] beyond the scope of coverage. These latter risks involve unique hazards to which the general business of the insured is not subject" Oakley Transport, Inc., 648 N.E.2d at 1107. It is reasonable to believe that the subsidence exclusion would apply to natural causes, unique hazards to which the construction business is generally not subject, and therefore are appropriately excluded from a construction insurance policy.

The "Subsidence of Land" exclusion clause is ambiguous, and we construe it narrowly to cover only earth movement by natural causes. Because the underlying claims allege only man-made earth movement, the allegations potentially fall within covered actions, and plaintiff is obligated to defend.

Plaintiff's alternative argument, that it is entitled to discovery regarding whether the alleged property damage was caused by subsidence, also fails. Generally, a trial court determining an insurer's duty to defend should confine its inquiry to a comparison of the underlying complaint and the insurance policy. Oakley Transport, Inc., 648 N.E.2d at 1103. Where an insurer, however, undertakes defense subject to a reservation of rights, and simultaneously requests a declaratory judgment as to its defense obligations, a trial court can look beyond facts contained in the complaint so long as the declaratory court does not decide an issue of ultimate fact in the underlying case. Fidelity & Cas. Co. of New York v. Envirodyne Engineers, Inc., 461 N.E.2d 471, 473 (Ill.App.Ct.1983) ("[I]f an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's

exclusions"). An ultimate fact has been defined as a "fact[] upon which recovery is predicated" in the underlying action. Maryland Cas. Co. v. Peppers, 355 N.E.2d 24, 30 (Ill.1976). In this case we have already determined that the "Subsidence of Land" exclusion, because of its ambiguity, should only apply to exclude earth movement due to natural causes. Because contract interpretation is a matter of law, rather than fact, we will not allow discovery to refute that determination. See Roman Catholic Diocese, 139 F.3d at 565 ("Illinois law ... treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily"). Therefore, the only fact at issue is whether the cause of the damage alleged in the underlying actions was man-made (and thus covered under the insurance policy) or natural (and thus excluded from coverage under the policy). To determine this question, the parties would have to take discovery on the cause of the damage alleged in the underlying complaints. As the underlying actions sound in negligence, causation is an element of the prima facie case and, therefore, is an ultimate fact. Thus, we cannot determine such a fact in this declaratory judgment action.

Plaintiff has a duty to defend in the underlying actions and we grant defendants' motion for dismissal as to the duty to defend.

Duty to Indemnify

Vuk also argues that the "duty to indemnify is premature until a determination has been made in the underlying lawsuits regarding Vuk's liability" (Vuk's mot. to dismiss at ¶ 2d). Essentially, defendants argue that the indemnity claim is unripe and, therefore, not justiciable. We agree. Unlike the duty to defend, the Seventh Circuit has held that "decisions about indemnity should be postponed until the underlying liability has been established." Lear Corp., 353 F.3d at 583 (7th Cir.2003). See also Grinnell Mut. Reinsurance Co. v. Reinke, 43 F.3d 1152,

1154 (7th Cir.1995) ("Illinois treats arguments about the duty to indemnify as unripe until the insured has been held liable"); Harleysville Lake States Ins. Co. v. Boller Constr. Co., 2005 WL 1323321, *2 (N.D.Ill.2005). In this case, neither Vuk nor any other defendant has yet incurred any actual liability in any underlying case. Therefore, we cannot decide the issue of indemnity until it is ripe for review.

Although this rule is "general," rather than "absolute," Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 680 (7th Cir.1992), this case does not present the special circumstances seen in Bankers Trust that would require a break from the general rule. See Molex Inc. v. Wyler, 334 F.Supp.2d 1083, 1088 ("Although it may be more convenient for the Court to resolve the duty to defend and duty to indemnify question simultaneously, convenience concerns cannot trump Article III's ripeness requirement.") Therefore, the motion to dismiss as it pertains to the duty to indemnify is granted.

## CONCLUSION

For the foregoing reasons, motions of defendants Vuk, Rhee, LaSalle, Lincoln, Ike & Rick's, and L & W to dismiss plaintiff's complaint are granted.

                                                                                                   _____
                                                                                                   JAMES B. MORAN
                                                                                                   Senior Judge, U. S. District Court

Nov. 28, 2005.